UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY ASBERRY,<br><br>           Petitioner,<br><br>   v.<br><br>A.K. SCRIBNER,<br><br>           Respondent. | 1:05-CV-0871 AWI JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Fresno County Superior Court. A jury found Petitioner guilty of robbery, and he admitted multiple prior convictions and other enhancements. The trial court sentenced him to a ten-year determinate term to run consecutively with an indeterminate term of twenty-five years to life. (Answer at 1-3.)

Petitioner appealed to the California Court of Appeal. The court affirmed the judgment. (Answer at 3; Lodged Docs. 1-4.)

Petitioner filed a petition for review in the California Supreme Court. The court summarily denied review. (Answer at 3; Lodged Doc. 6.)

1   On June 25, 2003, Petitioner filed a petition for writ of habeas corpus in the Fresno County
2   Superior Court. On July 8, 2003, the court denied the petition. (Answer at 3.)
3   On July 28, 2003, Petitioner filed a petition for writ of habeas corpus in the California Court
4   of Appeal. On July 20, 2004, the court denied the petition. (Answer at 3; Lodged Docs. 7-8.)
5   On August 14, 2004, Petitioner filed a petition for writ of habeas corpus in the California
6   Supreme Court. On June 29, 2005, the court denied the petition. (Answer at 3; Lodged Doc. 9.)
7   On September 8, 2004, Petitioner filed another petition for writ of habeas corpus in the
8   Superior Court. On September 15, 2004, the court denied the petition. (Answer at 3.)
9   On July 6, 2005, Petitioner filed the instant petition in this Court. The petition raises the
10  following eight grounds for relief: 1) Petitioner's Sixth Amendment right to counsel was violated
11  because his waiver of the right to counsel was not voluntary and intelligent; 2) Petitioner's right to
12  prepare a defense was violated when the trial court failed to appoint advisory counsel; 3) Petitioner's
13  due process rights and right to counsel were violated when he was denied the use of an investigator;
14  4) Petitioner's due process rights were violated by the cumulative impact of the denial of advisory
15  counsel and the denial of an investigator; 5) Petitioner's Sixth Amendment rights and due process
16  rights were violated because his admission of the enhancements and prior convictions was not
17  voluntary and intelligent; 6) Petitioner's right to counsel and due process rights were violated when
18  the trial court denied his motion to continue the sentencing hearing; 7) Petitioner's Sixth
19  Amendment rights were violated because his waiver of the right to counsel resulted from the Fresno
20  County Jail's refusal to provide necessary psychiatric treatment and medication; and 8) Petitioner's
21  Sixth Amendment rights were violated because the Fresno County Jail's refusal to provide necessary
22  psychiatric treatment and medication interfered with Petitioner's ability to interact with counsel.
23  On July 18, 2007, Respondent filed an answer to the petition.

**FACTUAL BACKGROUND**[1]

25  On May 21, 1999, a complaint was filed in the Fresno County Superior Court charging
26  Petitioner with robbing Marvin Edwards.

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of January 10, 2002. (Lodged Doc. 4.)

1    Petitioner waived his right to counsel on May 25 and represented himself at the preliminary
2  hearing.  Probable cause was found and an information filed.  Petitioner accepted representation by
3  the public defender's office.  Trial was set for August 5 and then continued to August 16.
4    At trial confirmation on August 12, Petitioner refused to waive his right to a speedy trial and
5  personally informed the court that he "wanted to proceed on the regular scheduled date and time for
6  my jury trial" and that if "the attorney is not ready, then I'll proceed pro per."
7    The matter was called for trial on August 16.  Petitioner stated that he did not trust his
8  attorney, Ralph Torres, and wanted to represent himself.  He was prepared and wanted trial to
9  commence immediately.  He did not want a *Marsden* hearing because appointment of another
10 attorney would require a continuance of the trial date, and he was "tired of sitting [in] jail."
11   Trial began the following day.  At the outset of the proceedings, Petitioner was arraigned on a
12 first amended information.  He pled not guilty to the robbery charge, but admitted a section 667.9
13 enhancement and further admitted having suffered six prior convictions within the meaning of the
14 three strikes law and having served four prior prison terms within the meaning of section 667.5,
15 subdivision (b).
16   A jury was selected and evidence taken.  The prosecution relied on two witnesses: The
17 victim, Marvin Edwards, and Brian Ridenour, the City of Fresno police officer to whom Edwards
18 reported the crime.  Edwards testified that he came to Fresno that afternoon to find his girlfriend,
19 Rachel Casias.  He encountered Petitioner, who agreed to help him locate her.  They drove around,
20 stopping at various hotels on G Street.  A man who was unknown to him soon joined them.  After
21 about an hour, Petitioner and the other man demanded money.  He refused to pay them because they
22 had not found Rachel.  Petitioner and the other man then beat and choked him into unconsciousness.
23 They stole his wallet containing $2,000 and his glasses.  After he regained consciousness, a man
24 returned his glasses.  Another man returned his empty wallet.  This second man told him that he had
25 seen two men running and that one of them had thrown the wallet into a trash can.
26   Officer Ridenour testified that Edwards told him that he was struck several times and that his
27 wallet was stolen.  Edwards's eyes were bruised, and he had suffered cuts and abrasions on his face.
28 Edwards did not tell him that he had been choked or lost consciousness.

Petitioner called Abdul Saeed, Lois Bradley, and Lenetta McArn. Saeed and Bradley both testified that they saw Edwards being beaten by a lone man who was not Petitioner. Bradley testified that she saw this man take Edwards's wallet and run away. McArn testified that Petitioner and Rachel had lived together in her home for a time. Edwards came to the house several times looking for Rachel and telephoned her frequently. Edwards offered McArn money to find Rachel for him.

The jury returned a guilty verdict.

At Petitioner's sentencing hearing, a "Mr. Taleisnik" appeared with him. He asked for a continuance of "a few weeks" so that he could "connect[ ]" with an unnamed family member Petitioner told him had the "ability to retain." The request was denied. Petitioner was sentenced to 10 years' imprisonment plus an indeterminate term of 25 years to life.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III. Review of Petitioner's Claims

#### A. Ground One

Petitioner argues that his Sixth Amendment right to counsel was violated because his waiver of the right to counsel was not voluntary and intelligent.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment. (Lodged Docs. 1-4.) The issue was then presented to the California Supreme Court, which summarily denied review. (Lodged Doc. 6.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner was properly advised of the risks involved in representing himself and that the record demonstrated he freely exercised the option to do so. (Lodged Doc. 4 at 10-11.)

Under the Sixth Amendment, a criminal defendant has the right to waive his right to counsel and represent himself. Faretta v. California, 422 U.S. 806, 835 (1975). "[T]he first requirement in this process is that the request to forego the assistance of counsel be unequivocal." U.S. v.

Robinson, 913 F.2d 712, 714 (9th Cir. 1990). "The second requirement under this circuit's reading of *Faretta* is that the defendant's waiver of the right to counsel must be made knowingly and intelligently; that is, a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self representation." Id. (quotation marks omitted). "In addition to being knowing and intelligent, a waiver of the right to counsel must also be voluntary." Id. at 715.

The state court's determination that Petitioner knowingly and intelligently waived his right to counsel was not unreasonable. Petitioner initially stated that he wished to represent himself because he wanted to proceed with the trial as soon as possible and because he felt that his appointed counsel had improperly provided information to the district attorney. (RT at 405.) Petitioner stated that he was prepared to proceed that day and that he did not want his appointed counsel to represent him "at all." (RT at 408-09.) The court then inquired whether Petitioner understood the rights he was giving up, the responsibilities he was undertaking, and the extremely serious consequences he was facing including "an awful long time in state prison." (RT at 409-10.) Petitioner stated that he understood, and he reiterated his desire to represent himself. (RT at 410.)

The court then further explained that Petitioner would not be given special favors because he did not have a lawyer and that he would be at a disadvantage because the district attorney was an experienced lawyer and Petitioner was not. (RT at 410-11.) Petitioner stated that he understood, adding that he did not trust his appointed counsel. (RT at 411.) When the court inquired whether Petitioner wanted a different attorney appointed to him, Petitioner stated that he would only accept new counsel if the trial could still take place within the scheduled time. (RT at 412.) When the court informed him that it was unlikely new counsel could prepare for trial on such short notice, Petitioner stated that he would represent himself because he was "tired of sitting [in] jail." (RT at 412-13.)

The record demonstrates that Petitioner made a knowing and intelligent waiver of his right to counsel, as he was advised of the charges against him, the penalties he faced, and the dangers of choosing to represent himself. It further shows that Petitioner's waiver of his right to counsel was both unequivocal and voluntary.

**B. Grounds Two, Three, and Four**

Petitioner argues that his right to prepare a defense was violated when the trial court failed to appoint advisory counsel and that his due process rights and right to counsel were violated when he was denied the use of an investigator. Petitioner further argues that, even if neither violated his rights on its own, the cumulative impact violated his due process rights and his right to a fair trial.

These claims were presented in an appeal to the California Court of Appeal, which affirmed the judgment. (Lodged Docs. 1-4.) The issues were then presented to the California Supreme Court, which summarily denied review. (Lodged Doc. 6.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Court of Appeal found that Petitioner had competently waived his right to counsel and that he had no right to the appointment of advisory counsel. (Lodged Doc. 4 at 11-13.) The court further found that Petitioner did not make a sufficient showing that an investigator was necessary for the preparation of his defense. (Id. at 13-15.)

"Under AEDPA, a federal court may grant a writ of habeas corpus only if the state court decision either (1) was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Pickett v. Duncan, 80 Fed.Appx. 548, 550 (9th Cir. 2003) (quotation marks omitted). "Under most circumstances, at least, there is no constitutional right to advisory counsel." Id. (stating that a pro se prisoner may be constitutionally entitled to advisory counsel under Ninth Circuit precedent if his access to a law library is sufficiently limited). Further, "there is no Supreme Court decision establishing a right to advisory counsel." Id.

There is also no clearly established United States Supreme Court authority requiring that indigent defendants who represent themselves be provided with investigative services. In fact, the Supreme Court has specifically declined to decide that question. See Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985). Moreover, the Court recently clarified that *Faretta v. California,* 422 U.S. 806 (1975), which established the right to self-representation under the Sixth Amendment, does not

clearly establish a right to law library access or any other specific legal aid that must be afforded to a criminal defendant who has chosen to represent himself. See Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005).

The state court's determination that Petitioner's rights were not violated was not contrary to or an unreasonable application of clearly established federal law, as there is no Supreme Court case establishing a pro se defendant's right to advisory counsel or investigative services.

### C.  Ground Five

Petitioner argues that his Sixth Amendment and due process rights were violated because his admission of the enhancements and prior convictions was not voluntary and intelligent.

These claims were presented in an appeal to the California Court of Appeal, which affirmed the judgment. (Lodged Docs. 1-4.) The issues were then presented to the California Supreme Court, which summarily denied review. (Lodged Doc. 6.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner was given all necessary advisements and that he knowingly and voluntarily admitted the special allegations. (Lodged Doc. 4 at 19-20.)

Before a criminal defendant pleads guilty, he must be advised that he is forfeiting three constitutional rights: 1) the privilege against self-incrimination; 2) the right to trial by jury; and 3) the right to confront and cross-examine witnesses. See Boykin v. Alabama, 395 U.S. 238, 243-44 (1969). However, "it is not necessary that each waiver be explicit as long as the plea was 'voluntary and intelligent.'" U.S. v. Carroll, 932 F.2d 823, 824-25 (9th Cir. 1991); North Carolina v. Alford, 400 U.S. 25, 31 (1970) ("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."). Further, "an admission of prior convictions which subject[s] a defendant to an enhanced sentence under a multiple offender statute is the functional equivalent of a guilty plea to a separate charge." Adams v. Peterson, 968 F.2d 835, 841 n.4 (9th Cir. 1992); see also Cox v. Hutto, 589 F.2d 394, 395-96 (8th Cir. 1979).

1  The state court's determination was not unreasonable.  Petitioner was initially advised that he
2  had the right to an attorney, the right to a jury trial, the right to call and cross-examine witnesses, and
3  the right to choose whether or not he would testify at trial.  (RT at 503-05.)  The trial judge then
4  asked Petitioner if he admitted the special allegations, explaining that, if he denied them, the
5  prosecution would have the burden to prove them at trial beyond a reasonable doubt.  (RT at 505-
6  07.)  Petitioner admitted the special allegations, acknowledging that he understood the rights he was
7  giving up by doing so.  (RT at 506-07.)  Petitioner then repeatedly admitted to the allegations
8  regarding his prior convictions, despite the trial judge informing him that he did not have to admit
9  them, that the prosecution would have to prove the allegations if he denied them, and that admitting
10 the allegations "could affect the length of the sentence."  (RT at 509-20.)  The court also reiterated
11 that Petitioner was giving up his right to a jury trial, his right to call and cross-examine witnesses,
12 and his right to choose whether or not to testify.  (RT at 519-20.)

The record shows that Petitioner was properly advised of his rights and that his admissions were voluntary and intelligent.

**D.  Ground Six**

Petitioner argues that his right to counsel and due process rights were violated when the trial court denied his motion to continue the sentencing hearing.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment.  (Lodged Docs. 1-4.)  The issue was then presented to the California Supreme Court, which summarily denied review.  (Lodged Doc. 6.)  The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner failed to show good cause for a continuance as he had sufficient time to retain an attorney prior to sentencing and because he did not demonstrate that counsel could be retained even if a continuance was granted.  (Lodged Doc. 4 at 21-22.)

"Under both federal and state law, the decision to grant or deny a motion for a continuance is

within the trial court's discretion." Harris v. Henry, 228 Fed.Appx. 710, 712 (9th Cir. 2007). However, to obtain habeas relief on a claim that a trial court improperly denied a motion for a continuance, a petitioner must show that the abuse of discretion rose to the level of a constitutional violation. Ferguson v. Schwarzenegger, 267 Fed.Appx. 707, 709 (9th Cir. 2008).

The state court's determination was not unreasonable. Petitioner had nearly a month between the verdict and sentencing to retain counsel. (RT at 809-10.) Further, at the sentencing hearing, the attorney Petitioner sought to retain acknowledged that he had not yet been retained and that a continuance of a few weeks would be required for him to properly prepare for sentencing. (Id.) Petitioner has not shown that the court's denial of his motion for a continuance violated his due process rights. Ferguson v. Schwarzenegger, 267 Fed.Appx. 707, 709-10 (9th Cir. 2008) (rejecting habeas claim that denial of motion for continuance violated due process where motion was first made at sentencing hearing and desired attorney had not indicated he was willing or able to represent the defendant); see also Harris v. Henry, 228 Fed.Appx. 710, 712 (9th Cir. 2007).

### E.  Grounds Seven and Eight

Petitioner argues that the Fresno County Jail's refusal to provide him with necessary psychiatric treatment and medication interfered with his ability to interact with counsel, thereby violating his Sixth Amendment right to counsel. Petitioner further argues that his inability to get treatment or medication resulted in his involuntary and unknowing waiver of his right to counsel.

These claims were presented in a petition for writ of habeas corpus to the California Court of Appeal, which summarily denied the petition with a citation to *People v. Duvall*, 9 Cal.4th 464, 474 (1995). (Lodged Docs. 7-8.) The issues were then presented in a petition for writ of habeas corpus to the California Supreme Court, which summarily denied the petition. (Lodged Doc. 9.)

"The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel." Caro v. Woodford, 280 F.3d 1247, 1254 (9th Cir. 2002). The Sixth Amendment is therefore violated when the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel if the interference causes substantial prejudice to the defendant. Williams v. Woodford, 384 F.3d 567, 584-85 (9th Cir. 2004). Further, as stated

above, a defendant has the right to waive his right to counsel and represent himself if the waiver is voluntary and intelligent.  Faretta v. California, 422 U.S. 806, 835 (1975); U.S. v. Robinson, 913 F.2d 712, 714-15 (9th Cir. 1990).

Here, Petitioner presents certain medical records in support of his claim that the Fresno County Jail's denial of medication and treatment negatively impacted his interaction with counsel and resulted in his involuntary and unknowing waiver of his right to counsel.  (See Lodged Doc. 7, Exs. A-B.)  The medical records, however, when viewed in the context of the record as a whole, do not demonstrate that Petitioner's inability to obtain medication or treatment substantially affected his relationship with counsel or prevented him from making a voluntary and intelligent waiver of his right to counsel.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   September 15, 2008           /s/ John M. Dixon
                                      UNITED STATES MAGISTRATE JUDGE